## WYATT COAL CO. v. DETROIT EDISON CO.

(Circuit Court of Appeals, Fourth Circuit. October 20, 1925.)

No. 2361.

1. Sales ⬥89—Acceptance of proposal for substituted contract could not be presumed from purchaser's silence for three days' time.

In buyer's action for breach of contract for the sale of coal, where seller, in letter of August 17th, proposed to alter existing contract by substituting a price of $2.50 per ton for coal instead of $2.25, acceptance of which proposal was rendered impossible by proclamation of the President on August 21st, fixing price of such coal at $2 per ton, held that no presumption of acceptance could arise from purchaser's silence between time of receipt of such letter on August 18th and time of President's proclamation on August 21st.

2. Contracts ⬥247—Party defending action on contract on ground that substituted contract was entered into has burden of proving such contract.

Party defending an action for breach of contract on ground that a substituted contract was entered has the burden of proving such contract.

3. Sales ⬥89—Evidence held insufficient to show that purchaser had ever surrendered any rights under contract for purchase of coal, though he had accepted coal at advanced figure after proposal for advance in price.

In buyer's action for breach of contract for the sale of coal at $2.25 per ton, where seller proposed to advance price to $2.50 per ton, previous contracts between parties to be canceled, evidence held insufficient to show plaintiff had ever surrendered any rights under original contract, despite its action in accepting coal after such proposed substitution at the advanced rate.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

Action by the Detroit Edison Company against the Wyatt Coal Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Fred O. Blue and Arthur S. Dayton, both of Charleston, W. Va. (Poffenbarger, Blue & Dayton, of Charleston, W. Va., on the brief), for plaintiff in error.

James V. Oxtoby, of Detroit, Mich., and T. Brooke Price, of Charleston, W. Va. (Oxtoby, Robison & Hull, of Detroit, Mich., and Price, Smith & Spilman, of Charleston, W. Va., on the brief), for defendant in error.

Before WOODS, WADDILL, and ROSE, Circuit Judges.

ROSE, Circuit Judge. The parties will be here described by the positions they held below; that is to say, the plaintiff in error will be called the defendant, and the defendant in error the plaintiff. When this case was first before us, we held that the right of action was not barred by limitations, but that the plaintiff's damages for short delivery were limited to 20 cents per ton. 1 F.(2d) 788. At the retrial below, there was a directed verdict for the plaintiff, and this time it is the defendant which brings the case here. It claims that the jury should have been instructed to return a verdict for it or that they should have been told that they were free to find that the plaintiff had validly released it from liability.

In February, 1917, seven or eight months after the making of the contract in suit, the parties entered into another agreement by which the defendant undertook to begin, in July, 1917, the delivery in twelve monthly installments of 250,000 additional tons of coal to the plaintiff, for which the latter bound itself to pay $2.25 per ton. In August, 1917, the defendant wrote to the plaintiff that the wages of miners had gone up since February. It asked the plaintiff to agree to a corresponding increase of 30 cents per ton in the price to be paid for the coal. No claim was then or is now made that any provision in the contract of 1917, justified this request, but defendant did say that, at the time the agreement was entered into, it was told by the plaintiff's representative that any increase in labor cost would be taken care of. It is unnecessary to say that in a suit upon that agreement defendant would not be allowed to prove a verbal understanding so inconsistent with the terms of the written instrument, nor need we inquire here how far the claim that there was such a verbal understanding and that defendant relied upon it might be sufficient consideration to support a new contract. On August 14th, plaintiff replied in writ-

ing. It assumed that it had the right to refuse to accede to defendant's wishes, but it also expressed its willingness to meet them in part. It said it would pay an additional 25 cents per ton but not 30 cents. On the 17th of August defendant answered by letter that it was willing to agree to limit the advance to 25 cents per ton, "providing you are agreeable to letting the old contracts which were in existence prior to July 1st stand completed and canceled as of July 1st." Among these contracts, the ending of which was suggested, was the one upon which the present action was brought. This letter of August 17th was never answered by the plaintiff. Defendant, who had begun in July shipments under the February contract, continued its deliveries, and on August 28th, began to send in bills for all deliveries made since July 1st at an advance of 25 cents per ton. In September the plaintiff made its first payment at the higher rate, and thereafter, without objection, continued to pay that price. Defendant argues that the failure of the plaintiff to answer the letter of August 17th, coupled with its subsequent acceptance of coal and payment therefor at the advanced rate, was evidence from which the jury might find that the plaintiff had accepted the proposal made in that letter. If nothing else had happened, we should have to consider carefully whether even then this contention would be sound, but what actually took place makes such an inquiry unnecessary.

[1-3] Four days after the writing and presumably the mailing of defendant's letter in Cincinnati to the plaintiff in Detroit, the President of the United States by proclamation exercised the power then recently conferred upon him by statute and fixed $2 per ton as the maximum price which could be paid for such coal as defendant was furnishing. Two days later he allowed a broker to charge an additional 15 cents per ton. These executive orders did not apply to contracts previously, in good faith, entered into. It goes without saying that the letter of August 17th could not of its own force alter a contract already in existence between the parties. That letter at best was a mere proposal, and remained so until it was in some way accepted by the plaintiff. After August 21st, when the President's proclamation was issued, the plaintiff could not lawfully have accepted it, even if it had wished to do so. There is nothing to show that, in the brief interval between the plaintiff's receipt of the letter at the earliest on Saturday, the 18th, and the action of the President on the succeeding Tuesday, it did anything at all. No presumption of acceptance could arise from its mere silence during so brief a space. It was entitled to take a reasonable time to consider whether it would agree to what the defendant asked. The latter has the burden of showing that a valid substituted contract was entered into. It points to the fact that the plaintiff actually paid it $2.50 per ton for the coal as it could not legally have done unless the agreement to do so had been made before August 21st, and that unless, before the last-mentioned date, the plaintiff had accepted the defendant's proposal of the 17th there had been no meeting of their minds. The contention is not without force, but we are not convinced by it. The plaintiff may well have felt that before August 21st, it and the defendant had in good faith agreed that it should pay as much as $2.50 per ton but that it had not then, or at any other time undertaken to pay the additional 4 cents or 5 cents a ton on all the 250,000 tons of the February contract, and that was what it would in effect have done had it released the defendant from its obligation to pay damages already accrued for the breach of the earlier contracts.

We are at one with the learned Judge below in the view that there is in this record no evidence legally sufficient to show that the plaintiff ever surrendered any of its rights under the contract in suit.

Affirmed.

Judge WOODS died before the above opinion was prepared.